UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SANDY ANDERSON and BRUCE ANDERSON, wife and husband,<br><br>   Plaintiff,<br><br>   v.<br><br>WAL-MART STORES, INC.,<br><br>   Defendant. | 2:16-cv-00072-SAB<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Summary Judgment, ECF No. 16, and Plaintiffs' related Motion to Strike, ECF No. 25. A hearing was held on April 25, 2017 in Spokane, Washington. Plaintiffs were represented by Stephen Bergman and Lawrence Kuznetz. Defendant was represented by Steven Goldstein. At the hearing, Defendant informed the Court that Plaintiffs' Motion to Strike, ECF No. 25, is uncontested. That motion is granted. For the reasons discussed herein, Defendant's Motion for Summary Judgment, ECF No. 16, is granted, in part, and denied, in part.

### Undisputed Facts

Plaintiff Sandy Anderson (Plaintiff) was hired by Defendant as a department supervisor in the fabrics and crafts department on July 25, 2012. Her duties included inventory control, stocking, clearance, merchandising, setting up

displays, and controlled ordering. Defendant had a policy of requiring floor associates, including Plaintiff, to clock out within five hours of the start of their shift in order to take a thirty-minute meal break. This policy comports with Washington law requiring that employees "shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift." WASH. ADMIN. CODE § 296-126-092(1). The policy provides that "[a]ssociates who violate this policy may be subject to disciplinary action up to and including termination." ECF No. 20. The policy further states that "[t]he level of discipline imposed will depend in part on the number of rest breaks and/or meal period exceptions that you incur." *Id.*

There were several additional policies in place during Plaintiff's term of employment with Defendant that are relevant to this case. First, the "10-foot rule" requires that an employee greet and assist a customer when they come within ten feet of him or her. Second, the customer safety policy requires an employee to guard a safety hazard in the store and remain present to guard the hazard from customer access until a supervisor is available to respond to and address the safety issue. And third, the department manager is not allowed to leave the department unmanned.

On October 23, 2012, Plaintiff failed to take a lunch break after her fifth consecutive hour of work had passed, missing the cutoff time by five minutes. Plaintiff testified that she was assisting a customer pursuant to the "10-foot rule" at this time. She further testified that Defendant conducted no investigation to determine whether Plaintiff was responsible for the violation, considering that she was assisting a customer, and Plaintiff was never asked her version of events. This violation resulted in disciplinary action on November 5, 2012, when Plaintiff received a "First Written Coaching."

On November 7, 2012, Plaintiff again violated Defendant's meal break policy by taking her lunch break after her fifth consecutive hour of work had

passed. Plaintiff testified that this occurred because a display module fell on a customer across from Plaintiff's desk just as she was approaching her fifth consecutive hour of work. At the time, Plaintiff's supervisor was gone and, pursuant to the store safety policy, Plaintiff went to assist the customer and clean up the broken display. This time she was twenty-six minutes late for her lunch break. Plaintiff notes that, had she simply left the display on the floor as a hazard for other customers, she would have been subject to discipline under the store's safety policy. However, Defendant conducted no investigation into the violation[1] and Plaintiff was not asked for her version of events. This second violation resulted in a "Second Written Coaching" on November 12, 2012 and Plaintiff was notified that a third violation would be grounds for discipline up to and including termination.

On December 4, 2012, Plaintiff again violated Defendant's meal break policy. She testified that she was in the middle of cutting fabric for three other customers, and did not leave those customers as a result of the 10-foot rule. As a result, she clocked out six minutes late for lunch. This third violation resulted in a "Third Written Coaching," which stated that a fourth violation would result in termination. Plaintiff argues that, again, no investigation was conducted[2] and Defendant never explained to her that the two written coachings she received stayed on her record for a period of one year.

On March 8, 2013, Plaintiff suffered an on the job injury to her back and neck while lifting heavy safes with another employee. Plaintiff felt pain at the time but was not aware of the extent of her injury, and continued working. The

---

[1] The record demonstrates that a "National Rest Break/Meal Period Investigation Worksheet" was filled out in connection with this violation. However, the form requires the investigating manager to ask the associate the reason for the violation. This section of the worksheet was left blank.
[2] An investigation worksheet was completed for this violation, and indicates that Plaintiff stated that she was cutting fabric for three customers at the same time.

following Monday, March 11, 2013, Plaintiff reported her injury to a human resources employee who expressed concern about the store being understaffed and asked Plaintiff whether she thought she needed to leave work. Plaintiff viewed this as an implication that she should not seek medical treatment for the injury, and was told that if she needed medical treatment she should report her injury to her supervisor, Kristen Twiss (Twiss). Part of Plaintiff's belief that she was being told not to seek treatment is based on her testimony that Defendant discouraged the filing of workers' compensation claims. Specifically, Defendant had a policy to pay a yearly store-profit bonus to supervisors and managers, including Plaintiff. However, any workers' compensation claim filed by an employee directly affected the amount of the bonus each supervisor or manager would receive because Defendant is a self-insured entity. During a meeting, Defendant actively discouraged the filing of workers' compensation claims, and when an assistant manager told employees that each claim filed cost the store $12,000, everyone "booed" at an employee who had filed a claim.

On March 14, 2013, Plaintiff was moving a box of decorative rocks and felt an immediate sharp pain in her neck and back. She again reported the injury and her need for medical treatment to human resources. Plaintiff was told that she should work through the pain, but Plaintiff tasked the associates in her department with any job duties that required lifting over ten pounds to prevent further injury. On March 15, 2013, Plaintiff reported her injury to Twiss, informing her that she needed to seek medical treatment. Twiss had Plaintiff fill out an incident report and told her to take the weekend to see how she felt. Plaintiff did not seek treatment that day. On March 19, 2013, Plaintiff again asked Twiss permission to seek medical treatment for her injuries, but Twiss told her that she could not go to the emergency room because Defendant had a policy that a manager was required to drive an employee to the emergency room. Twiss stated that no manager was available, and Plaintiff returned to work. About an hour later, Twiss ordered

Plaintiff to take a drug test pursuant to store policy, and subsequently told Plaintiff that she was free to drive herself to the emergency room. Plaintiff received treatment at the Rockwood Clinic in Spokane, was taken off work for three days, and filed a workers' compensation claim for her back injury and aggravation.

On March 22, 2013, Plaintiff was treated by Dr. Christopher Goodwin, who placed her on modified duty beginning March 25, 2013, with a lifting restriction of 10 pounds, no crawling or vibratory tasks, and climbing a ladder occasionally. She was referred to Dr. John Goldfeldt for chiropractic treatment. Plaintiff returned to work on March 25, 2013, at which time she was presented with a Temporary Alternative Duty (TAD) form indicating that Clarissa Sanders (Sanders) was Plaintiff's new supervisor and that Sanders was aware of Plaintiff's medical limitations. By accepting the TAD offer, Plaintiff retained the same job title, compensation, hours, and benefits. However, if she experienced any problems in the performance of her duties, she was instructed to report them to her supervisor.

Plaintiff testified that she understood that her regularly scheduled associates would continue to be available to assist her in the department. These included two full-time and two part-time associates that were staffed in Plaintiff's department during busier times. Sanders acknowledged that it would be difficult for a person with her restrictions to accomplish their daily tasks without associate help, yet Sanders failed to schedule either of the regular part-time associates in Plaintiff's department and failed to schedule one of the full-time associates. Near the end of March 2013, Plaintiff was told that her associates would not be returning to her department, but was not told why. Defendant states that this was because of seasonal demand. Plaintiff requested that the associates be returned to her department because of her restrictions, specifically to assist with putting away items left by the night crew, but no associates were scheduled in her department. Plaintiff likewise requested a radio to call for assistance in her department when she needed help lifting, but she was denied this request. On May 9, 2013, Plaintiff

was working alone in her department, picked up a mislabeled box, and further aggravated her back injury.

Defendant notes that it has an "Open Door Policy" wherein employees may contact the human resources department or the Global Ethics Office. Employees are instructed to utilize the policy if they feel that they are being discriminated or retaliated against, or if they become aware of any conduct that may violate Defendant's Accommodation Policy. Defendant notes that Plaintiff reported having problems in performing her duties under the TAD restrictions pursuant to the "Open Door Policy" and that each time she was accommodated. However, Plaintiff did not report that her problems were due to her TAD restrictions, such as when she asked for her regularly scheduled associates and radio. Specifically, Plaintiff did not state that she needed accommodations because of her TAD restrictions, but rather so that she could complete her normal duties.

On May 14, 2013, Sanders ordered Plaintiff to break down a display module. Plaintiff contends that Sanders was aware that this task would require her to lift in excess of ten pounds in violation of her TAD restrictions. Sanders did not schedule any associates to help her with this task. Sanders instructed Plaintiff that if she did not break down the display immediately, she would be written up. Plaintiff testified that she feared for her job, and instead of complaining, broke down the display. In following Sanders's instructions, Plaintiff exceeded the end of her shift by fifteen minutes in violation of Defendant's meal break policy. She testified that she was not asked for her version of events and no investigation occurred. On that day Plaintiff appropriately clocked out for her first lunch, but she was terminated for having clocked out late for a second lunch, although this was technically the end of her shift. Between March 19, 2013 and the date of her termination for "Misconduct with Coachings," May 25, 2013, Plaintiff had not been released to full duty work.

//

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, discovery, and affidavits demonstrate there is no genuine issue of material fact *and* that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. *See also Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

When considering a motion for summary judgment, the Court neither weighs evidence nor assesses credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. When relevant facts are not in dispute, summary judgment as a matter of law is appropriate, *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), but "[i]f reasonable minds can reach different conclusions, summary judgment is improper." *Kalmas v. Wagner*, 133 Wn. 2d 210, 215 (1997). In employment discrimination cases, "summary judgment in favor of the employer is seldom appropriate." *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 144 (2004).

## Analysis

The Washington Law Against Discrimination, WASH. REV. CODE § 49.60.010-.505 (WLAD) "states that it is an unfair practice for an employer to refuse to hire, discharge, or discriminate in compensation based on a person's sensory, mental, or physical disability." *Riehl*, 152 Wn.2d at 144-45 (citing WASH. REV. CODE § 49.60,010, .180(1)-(3)). An employee has two causes of action under WASH. REV. CODE § 49.60.180: (1) "failure to accommodate where the employer failed to take steps 'reasonably necessary to accommodate the employee's

condition"; and (2) a disparate treatment claim wherein the "employer discriminated against the employee because of the employee's condition." *Riehl*, 152 Wn.2d at 145 (citing *Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 17 (1993)). An employee may also have a claim for retaliation under WASH. REV. CODE § 49.60.210 where an employee engages in a statutorily protected activity, the employee was discharged, and retaliation was a substantial factor behind the discharge. *Vasquez v. State Dept. of Social and Health Servs.*, 94 Wn. App. 976, 984 (1999).

### 1. Disability Discrimination (Disparate Treatment)

Where, as here, a plaintiff lacks direct evidence of employment discrimination, "Washington courts use the burden-shifting analysis articulated in *McDonnell Douglas* [*v. Green*], 411 U.S. 792 [(1973)] to determine the proper order and nature of proof for summary judgment." *Scrivener v. Clark College*, 181 Wn.2d 439, 445 (2014). Under the first prong of *McDonnell Douglas*, Plaintiff bears the burden of establishing a prima facie case, establishing a presumption of discrimination. *Id.* at 446. A prima facie case can be established where Plaintiff demonstrates that (1) she had a disability; (2) she was able to do her job; (3) she was discharged from employment; and (4) was replaced by someone who did not have a disability. *Balkenbush v. Ortho Biotech Products, L.P.*, 653 F. Supp. 2d 1115, 1122 (E.D. Wash. 2009). "Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (citing *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 363-64 (1988)). If Defendant meets its burden, the third prong of *McDonnell Douglas* requires Plaintiff to produce sufficient evidence that Defendant's proffered nondiscriminatory reason is pretext for a discriminatory purpose. *Id.* "If the plaintiff satisfies the McDonnell Douglas burden of production requirements, the

case proceeds to trial, unless the judge determines that no rational fact finder could conclude that the action was discriminatory." *Id.*

Defendant concedes that Plaintiff is able to meet her initial burden of production. However, Defendant argues that it had a legitimate nondiscriminatory reason for terminating her employment: Plaintiff was fired for repeatedly violating Defendant's meal break policy. The Ninth Circuit has held that violations of company policy can constitute a legitimate reason for termination. *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1118 (9th Cir. 2011). At such a point, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason is merely pretext for discrimination. Plaintiff argues that Defendant's stated reason for firing her, violations of the meal break policy, was simply pretext for three reasons: (1) Plaintiff's termination occurred in close proximity to the time Defendant became aware of Plaintiff's disability[3]; (2) Defendant violated its own policy; and (3) Defendant applied the meal break policy to Plaintiff in an arbitrary fashion.

When rebutting an employer's legitimate nondiscriminatory reason for the employment action, Plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). Typically, a plaintiff must demonstrate pretext by showing that the proffered nondiscriminatory reason is unworthy of belief, *i.e.*, that it (1) has no basis in fact; (2) was not really a motivating factor for the decision; or (3) was not a motivating factor in employment decisions for other employees in the same circumstances. *Kirby v. City of Tacoma*, 124 Wn. App. 454, 467 (2004). A

---

[3] This argument is more properly analyzed in connection with Plaintiff's retaliation claim. Courts routinely hold that "[t]emporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence in some cases." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003).

plaintiff may "raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." *Earl*, 658 F.3d at 1117. Here, Plaintiff contends that Defendant did not follow its own policy in two respects. First, that Defendant failed to administer a drug test when Plaintiff first reported an injury,[4] and second, when it did not investigate whether Plaintiff was at fault for the meal break violations. These arguments are persuasive for the purposes of this motion.

Specifically, Plaintiff points to Defendant's policy that for each alleged employee violation of the meal break policy, there will be an investigation to determine whether the employee is responsible for causing the alleged violation. ECF No. 21. If the investigation reveals that there was a time clock malfunction or Defendant determines that the employee is not responsible for the meal break violation, then no discipline will result. *Id.* Plaintiff contends that at no point was there an investigation into her violations of the meal break policy. The record does contain "National Rest Break/Meal Period Investigation Worksheets" completed after Plaintiff missed her second, third, and fourth meal breaks, with time clock records. However, two of the worksheets show that the investigating manager did not do a complete evaluation insofar as they did not ask Plaintiff why her meal break was not taken. For the third violation, this section of the form was completed, and indicates that Plaintiff missed her meal break because she was cutting fabric for three customers.

Defendant argues that, even if there was no investigation conducted after the first violation, no pretextual motive can reasonably be assigned to this failure because Plaintiff had not been injured, nor had she sought accommodation or filed her workers' compensation claim. Notably, the first three meal break violations

---

[4] With regard to her disparate impact claim, Plaintiff does not argue that the deviation from the drug testing policy worked to her disadvantage. Rather, she uses this evidence to support her retaliation claim.

occurred before Plaintiff was even injured. Plaintiff admits that she knew that she might be terminated for violating the meal break policy and knew that Defendant considered her violations a serious problem. After Plaintiff received her third written warning for violating the meal break policy, she testified that she understood that a fourth written warning could result in termination. Moreover, Plaintiff testified that she understood that she could take her meal break earlier to avoid the five hour requirement.

Nonetheless, Plaintiff contends that Defendant's failure to investigate the cause of her violations is evidence of pretext. Plaintiff states that an investigation would have revealed that she was not responsible for the violations. Plaintiff also contends that the decision to terminate her was driven by issues regarding her request for reasonable accommodations made after her on the job injury.

In response, Defendant blames Plaintiff for the choices she made on the road to her termination of employment. Plaintiff did make those choices, but each time she was forced to choose between two difficult alternatives. Should she violate the lunch break rule or the 10 foot rule (which is the choice Plaintiff was forced to make twice)? Should she violate the lunch break rule or the customer service policy (which is the choice Plaintiff was forced to make once)? Should she violate the lunch break rule or specific instructions from her supervisor (which is the final choice Plaintiff was forced to make)?

Defendant ignores the fact that it too made choices at every step down this road. Defendant chose to create, impose, and enforce rules and policies which at times required employees to make difficult decisions, as Plaintiff was required to do in this case. Defendant could have more thoroughly investigated the four lunch break violations at issue to determine why the rule was violated, and in reference to the fourth and last violation, Defendant could have engaged in the required interactive process to determine if the violation was caused in any way by other

excusable factors. Defendant chose not to take these steps and consequently exposed itself to this lawsuit.

Plaintiff has raised genuine issues of material fact as to the issue of pretext and has proffered evidence that Defendant's reason for terminating Plaintiff, violations of the meal break policy, is unworthy of belief and not the actual reason of termination. Defendant's motion for summary judgment regarding Plaintiff's disparate treatment claim is **denied**.

**2. Failure to Accommodate**

The WLAD provides that "an employer has an affirmative duty to reasonably accommodate a disabled employee and that an employer's failure to do so constitutes unlawful discrimination." *Fischer-McReynolds v. Quasim*, 101 Wn. App. 801, 808 (2000). In order to establish a prima facie case of failure to accommodate, Plaintiff must demonstrate that (1) she is disabled; (2) she is qualified to fill a vacant position with her employer; and (3) her employer failed to reasonably accommodate her disability. *Id.*

Additionally, "[t]he duty of an employer to reasonably to accommodate an employee's handicap does not arise until the employer is 'aware of respondent's disability and physical limitations.'" *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408 (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 391 (1978)). The employee bears the burden of giving notice to the employer. *Id.* Once the employer is aware of the disability, the employer's burden to take positive steps to accommodate the employee's limitations is triggered. *Id.* "To accommodate, the employer must affirmatively take steps to help the disabled employee continue working at the existing position or through attempts to find a position compatible with her limitations." *Griffith v. Boise Cascade, Inc.*, 111 Wn. App. 436, 443 (2002).

Defendant does not dispute that Plaintiff was disabled within the meaning of the WLAD or that she was qualified to perform the essential functions of her job.

Rather, Defendant argues that Plaintiff failed to give Defendant proper notice of her disability and that Defendant reasonably accommodated her disability.

*Notice.* Defendant concedes that it initially had notice of Plaintiff's disability. Rather, it contends that Plaintiff failed to notify Defendant that she was exceeding her TAD restrictions by utilizing the Open Door Policy, contacting the Human Resources department, or calling the Global Ethics Office. Defendant notes that on multiple occasions, Plaintiff had used the Open Door Policy to notify Defendant that she was experiencing problems complying with her TAD restrictions in light of her duties.

Plaintiff did, however, tell her supervisor that she needed her normal associates to complete her regular duties. She also requested a radio for when she needed help from other associates. Defendant argues that because Plaintiff did not explicitly state that she needed these accommodations because of her TAD restrictions, it had no further duty to accommodate her. There are genuine issues of material fact from which a jury could infer that Defendant had notice of accommodations required and failed to provide them. Defendant clearly had notice that Plaintiff had medical restrictions at the outset by its own admission. This triggered a duty to engage in an interactive process in which accommodations could be made. Defendant now claims that it did not know that the requested accommodations were because of her medical restrictions. There are genuine issues of material fact as to whether Defendant had notice of the required accommodations and whether it failed to engage in an interactive process to provide those accommodations, thus precluding summary judgment.

*Accommodations.* Defendant further claims that it did reasonably accommodate Plaintiff when so requested. However, based on the analysis above, there are genuine issues of material fact from which a jury could infer that Defendant failed to accommodate Plaintiff. When Plaintiff requested her regularly scheduled associates in her department so that they could help, her request went

unheeded. She testified that this accommodation was required in order to comply with her TAD restrictions. In response, Defendant offers a reason that her associates were moved from her department; that it was a seasonal demand issue. However, Defendant does not argue that the requested accommodation was in any way unreasonable, which would be a viable defense to Plaintiff's failure to accommodate claim. Thus, Defendant's motion for summary judgment regarding Plaintiff's failure to accommodate claim must be **denied**.

**3. Retaliation**

In order to make out a prima facie case of retaliation for opposing an employer's discriminatory practices or for filing a discrimination claim against the employer, Plaintiff must demonstrate that (1) she engaged in a statutorily protected activity; (2) the employer took adverse employment action against her; and (3) there is a causal link between the activity and adverse action. *Milligan v. Thompson*, 110 Wn. App. 628, 638 (2002) (citing *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 862 (2000)). With regard to the prima facie case,

> The first element describes opposition to "any practices forbidden by" RCW 49.60.13. When a person reasonably believes he or she is opposing discriminatory practices, RCW 49.60.210(1) protects that person whether or not the practice is actually discriminatory. A plaintiff proves causation by showing that retaliation was a substantial factor motivating the adverse employment action.

*Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 743 (2014). Because employers typically do not reveal retaliatory motive, plaintiffs generally must resort to circumstantial evidence. *Id.* at 746. "Proximity in time between the protected activity and the discharge, as well as satisfactory work performance and evaluations before the discharge, are both factors suggesting retaliation." *Id.* at 747. Additionally, "if an employee establishes that he or she participated in a statutorily protected opposition activity, the employer knew about the opposition

activity, and the employee was then discharged, a rebuttable presumption of retaliation arises that precludes summary dismissal of the case." *Id.*

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims. Once Plaintiff establishes a prima facie case, the burden shifts to the employer to "present evidence of a nonretaliatory reason for its actions." *Milligan*, 110 Wn. App. at 638. Once the employer satisfies its burden of production, then Plaintiff must "present evidence that the reason is pretextual." *Id.* As with the above analysis regarding Plaintiff's disparate impact claim, the real issue here is whether Plaintiff has made a sufficient showing that the reason for her termination was pretextual. She did. The record shows that Defendant had a culture of actively discouraging the filing of workers' compensation claims, which is sufficient to raise a genuine issue of material fact as to whether its reason for terminating Plaintiff was pretextual.

*Workers' Compensation Claim.* First, the parties do not dispute that Plaintiff can establish the first two elements of her prima facie case: (1) that she engaged in a statutorily protected activity by filing a workers' compensation claim; and (2) that she was terminated. However, Defendant argues that a two-month time span between the filing of a workers' compensation claim and the date of the adverse employment action is too long of a time lapse to establish the causal link required of a prima facie case of retaliation. Plaintiff filed her workers' compensation claim on March 19, 2013 and was terminated less than two months later on May 15, 2013. The Ninth Circuit has held that where an employer knows that an employee engaged in a protected activity and took adverse employment action against that employee less than two months later, that evidence is sufficiently probative of a causal link for the employee's retaliation claim to withstand summary judgment. *See, e.g.*, *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 730 (9th Cir. 1986).

Defendant next claims that it had a legitimate nondiscriminatory reason for terminating Plaintiff; her four meal break violations. Violation of company rules

constitutes a legitimate nondiscriminatory reason for termination. Plaintiff counters by arguing that this reason is merely pretext for discrimination based on Defendant's culture of workers' compensation claim suppression and that Plaintiff was actively discouraged from filing a claim. WASH. REV. CODE § 51.28.010 prohibits employers from engaging in workers' compensation claim suppression, including inducing employees to fail to report injuries or otherwise suppressing legitimate claims.

Plaintiff points to evidence tending to show that Defendant actively discouraged employees from filing workers' compensation claims. Defendant is self-insured and has a bonus structure that is directly linked to store profits. Sanders and Twiss admitted that filing workers' compensation claims had a direct effect on store profits, which directly affects the bonus amount distributed to every employee. Moreover, during a meeting, Defendant actively discouraged the filing of workers' compensation claims, and when an assistant manager told employees that each claim filed cost the store $12,000, everyone "booed" at an employee who had filed a claim. Plaintiff also contends that she was discouraged from filing a claim on several occasions: (1) on March 11, 2013 when she initially reported her injury but was told she needed to continue to work; (2) on March 14, 2013 when she discussed her injury with Human Resources and was told the same thing; (3) when Twiss told Plaintiff to take the weekend to see if she felt better; and (4) on March 19, 2013 when she was permitted to seek treatment, but not until after a drug test was administered.

Plaintiff further argues that Defendant's failure to follow their own policy to investigate meal break violations and to administer a drug test after an injury at work constitutes evidence of pretext. Here, Defendant's failure to administer a drug test after Plaintiff initially reported her injury is probative of pretext. After an injury occurs at work, Defendant has a policy to administer a drug test to the employee. However, Defendant did not initially administer a drug test, but waited

eight days until March 19, 2013, when Plaintiff was given permission to file a workers' compensation claim. Thus, Plaintiff argues, it was only until it became imminently clear that Plaintiff intended to file a workers' compensation claim that the drug test was administered.

It is notable that there is evidence that Defendant discouraged employees from filing workers' compensation claims due to the bonus structure at the company, and that it did not administer a drug test until it became apparent that Plaintiff intended to file a workers' compensation claim. Viewing the evidence in the light most favorable to Plaintiff, there are genuine issues of material fact regarding retaliation in response to filing a workers' compensation claim. Accordingly, Defendant's motion is **denied** on Plaintiff's retaliation claim as it relates to her filing a workers' compensation claim.

*Requesting Reasonable Accommodations.* Plaintiff also claims that she was retaliated against because she requested a reasonable accommodation. In order to establish a prima facie case of retaliation, Plaintiff most demonstrate that (1) she engaged in a statutorily protected activity; (2) the employer took adverse employment action against her; and (3) there is a causal link between the activity and adverse action. *Milligan*, 110 Wn. App. at 638. Courts hold that, under the WLAD, taking adverse action against an employee for requesting a disability accommodation violates WLAD's anti-retaliation provision. *Hansen v. Boeing Co.*, 903 F. Supp. 2d 1215, 1218 (W.D. Wash. 2012).

Plaintiff first requested accommodation on March 25, 2013 when her doctor imposed restrictions and she was released to light duty work. Plaintiff contends that Defendant took adverse action against her first when it unilaterally changed her working conditions by taking away assistants in her department and failed to accommodate her, and second when it terminated her. This is evidenced by the temporal proximity between the request and the adverse action. Defendant contends that Plaintiff was fired for violating its meal break policy, a legitimate

nondiscriminatory reason for termination. Plaintiff counters that Defendant's proffered reason is pretext for discrimination. She relies on many of the same arguments previously made: (1) that Defendant applied its meal break policy arbitrarily and violated its investigation requirement; and (2) that the close temporal proximity between the requested accommodation and termination (two months) demonstrates pretext.

For the same reasons already discussed, there are genuine issues of material fact as to whether Plaintiff was terminated in retaliation for requesting accommodations. For example, a jury could reasonably infer that the close temporal proximity between Plaintiff's requests for her regular associates and a radio and her termination are evidence of pretext. Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claim is **denied**.

### 4. Wrongful Termination in Violation of Public Policy

Plaintiff contends that her termination for filing a workers' compensation claim violated WASH. REV. CODE § 51.48.025, constituting wrongful discharge in violation of public policy. Pursuant to Washington law, an employee has a cause of action against an employer who discharged her in retaliation for pursuing a workers' compensation benefits by demonstrating that (1) "she exercised the statutory right to pursue workers' benefits under Title 51 RCW or communicated to the employer an intent to do so or exercised any other right under RCW Title 51"; (2) "she was discharged"; and (3) that there is a "causal connection between the exercise of that legal right and the discharge." *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 491 (2004). In order to establish a prima facie case, Plaintiff "need not attempt to prove that the employer's sole motivation was retaliation based on the employee's pursuit of benefits under the Industrial Insurance Act." *Id.* The employee need only produce evidence "that pursuit of a workers' compensation claim was *a* cause of the firing." *Id.*

//

The causation element may be satisfied by proximity in time between the protected activity and the firing, and may also be demonstrated "by merely showing that she filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged." *Id.* Once Plaintiff establishes a prima facie case, the burden of production shifts to the employer to "articulate a legitimate reason for the discharge that is neither pretext nor retaliatory." *Id.* at 492. At such point, the burden shifts back to the employee to demonstrate that the proffered reason is pretext or by showing that the employer's reasons is legitimate, but the pursuit of a workers' compensation claim was a substantial factor motivating the employer to fire that employee. *Id.*

Because the Court denies Defendant's motion for summary judgment on Plaintiff's retaliation claim, it likewise **denies** Defendant's motion on Plaintiff's wrongful termination claim, as the elements of the two causes of action are essentially identical. *Compare Milligan*, 110 Wn. App. at 638, *with Anica*, 120 Wn. App. at 491.

## 5. Failure to Pay Wages

Plaintiff further alleges that her unlawful termination resulted in the deprivation of wages owed her, constituting an intentional failure to pay wages in violation of WASH. REV. CODE § 49.52.050(2). That provision provides that any employer, whether in private business or a public official, who "[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by statute, ordinance, or contract," is guilty of a misdemeanor. This statute is not an independent cause of action, but rather gives rise to a claim for back wages.

Washington courts have noted that the WLAD prohibits employment discrimination on the basis of disability, and a worker subject to illegal discrimination under the WLAD "may obtain actual damages, including back

wages, resulting from discrimination." *Clipse v. Comm. Driver Servs., Inc.*, 189 Wn. App. 776, 785 (2015). WASH. REV. CODE § 49.52.050(2), however, prohibits an employer from paying a lower wage than it is obligated to pay. WASH. REV. CODE § 49.52.070 "creates civil liability, including double damages, costs, and attorney fees, for violation of RCW § 49.52.050." *Id.* However, § 49.52.050 only imposes liability upon an employer if it pays a wage less than it is obligated to pay; "the word 'obligated' implies a preexisting duty to pay a specific wage." *Id.* (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002)). Under the WLAD, any back wages a plaintiff receives for adverse employment actions do not accrue until the jury reaches a verdict." *Id.* (citing *Hemmings*, 285 F.3d at 1203). "Thus, retrospective WLAD damages are not wages the employer was obligated to pay, because there was no preexisting duty to pay these specific wages." *Id.* (quoting *Hemmings*, 285 F.3d at 1203). Consequently, "retrospective jury damages in a WLAD suit are not wages employers are 'obligated' by statute to pay, thus precluding an award for double damages." *Id.*

Because the precedent is clear that Plaintiff in a WLAD suit cannot obtain double damages under WASH. REV. CODE § 49.52.050(2), Plaintiff's claim for double damages must fail as a matter of law.

**6. Loss of Consortium**

A claim for loss of consortium is a "separate, independent, nonderivative action of the deprived spouse." *Donelson v. Providence Health & Servs.-Wash.*, 823 F. Supp. 2d 1179, 1191 (E.D. Wash. 2011). An element of this cause of action is that a tort was committed against the impaired spouse. *Id.* (citing *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 953 (1986). Washington courts have held that, in loss of consortium claims, violation of the WLAD is a tort. *Id.* (citing *Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 494 (2009)). Based on the reasons stated above, Defendant's motion for summary judgment on the loss of consortium claim is **denied**.

**7. Tax Consequences**

A plaintiff may be entitled to an offset for federal tax consequences of damages of awards. *See Blaney v. Int'l Ass. of Machinists & Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 215 (2004). Based on the reasons stated above, Defendant's motion for summary judgment on the tax consequences claim is **denied.**

In sum, Defendant's Motion for Summary Judgment, ECF No. 16, is granted as to to Plaintiffs' claim for double damages and denied in all other respects.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED, in part, and DENIED, in part**.

2. Plaintiffs' Motion to Strike, ECF No. 25, is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 11th day of May, 2017.

Stanley A. Bastian
United States District Judge